139 N.J. Super. 588 (1976)
354 A.2d 691
STATE OF NEW JERSEY, PLAINTIFF,
v.
JOSEPH COSTA, JOHN CUFF, JOHN DEL MAURO AND GERALD DONNERSTAG, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided January 19, 1976.
*589 Mr. John A. Matthews, III, for plaintiff (Mr. Joseph P. Lordi, Essex County Prosecutor, attorney).
Mr. Michael Querques for defendant Costa.
Mr. John Noonan for defendant Cuff (Messrs. Noonan & Flynn, attorneys).
Mr. Dino Bliablias for defendant Del Mauro (Messrs. Stein, Bliablias & Goldman, attorneys).
Mr. Michael D'Alessio for defendant Donnerstag (Messrs. Schwartz, Fielo & D'Alessio, attorneys).
FUSCO, J.S.C.
In this case Newark Municipal Court Clerk John Del Mauro, Newark Police Detective Joseph Costa, retired Newark Detective John Cuff and Gerald Donnerstag are charged with conspiracy to commit the crimes of misconduct in office, bribery and extortion. Del Mauro, Costa and Cuff are also charged with misconduct in office, bribery and extortion.
The court must rule, during this trial, on the admissibility of character testimony going to the "honesty" and "truthfulness" of Cuff and Del Mauro, who themselves did not testify.
*590 The State alleges that the detectives made a deal with two persons arrested by them to have the charges modified so that they would not receive jail terms. The suspects, Gerald Festa and Harold Ellis, were arrested on July 22, 1970 while burglarizing a home in Newark.
The State offered evidence that Donnerstag was the go-between in setting up the deal with the detectives, who were allegedly paid $1,800. The State alleged that the detectives withheld information from an assistant county prosecutor so that the charges against Festa and Ellis would be modified to larceny of under $500 and so that the municipal court would have jurisdiction. N.J.S.A. 2A:8-22.
Festa and Ellis pleaded guilty to larceny in municipal court. Festa testified that the defendant Costa told him to conceal his previous arrests from a probation officer working on a presentence report after he had pleaded guilty, and to give false information as to his place of birth and schooling. Prior to sentencing on September 24, 1970 before Newark Municipal Court Judge Molinaro, Festa said that defendant Del Mauro, then deputy court clerk, approached Donnerstag, who had accompanied defendants to the courtroom, and demanded $1,000 or he would transfer the case to another, more severe judge.
Festa said that Donnerstag and Del Mauro then agreed on a $200 payment, and that he gave the money to Donnerstag, who handed it to Del Mauro.
Costa testified and denied the allegations. He also presented character witnesses who attested to Costa's "truthfulness," "honesty" and "integrity" and that he was "law-abiding." Cuff and Del Mauro presented character witnesses who testified in a like manner: however, these defendants did not testify in their own behalf.
The State has moved for the court to instruct the jury that they should not consider the testimony of the character witnesses for Cuff and Del Mauro, contending that since they had not taken the stand, the character testimony as it *591 went to "truthfulness" and "honesty" was not relevant to any trait in issue in the case, as required by Evid. R. 47.
Defendants argue that even though a defendant does not take the stand, all of these issues are traits of character to be considered by the jury in determining whether the State has established its case beyond a reasonable doubt.
The issue before the court is whether the testimony of the character witnesses who testified on behalf of the two defendants, who themselves did not testify, should go to the jury, or whether the jury should be instructed to strike particularly from the testimony such evidence as to "honesty" and "truthfulness."
New Jersey has consistently held to the view that evidence of a defendant's good character may be demonstrated by proof of his reputation in the community where he is known for the specific trait involved in the crime. State v. Reyes, 50 N.J. 454, 468 (1967).
Citing from McCormick, Evidence, § 158 at 333-334, the court in Reyes stated that while proof of general good character is permitted in a few courts, the prevailing and more practical view limits the inquiry to the traits involved in the crime on trial; honesty in thert faces, peaceableness in murder, and the like. The court went on to say that where the crime on trial: honesty in theft cases, peaceableness in specification of the precise trait of character, good reputation generally of a disposition contrary to the act charged which would indicate an unlikelihood of its commission by a defendant is then permissible. Id. at 468.
In State v. Barts, 132 N.J.L. 74, 87 (Sup. Ct. 1944), aff'd 132 N.J.L. 420 (E. & A. 1945), a police officer was charged with extortion. The court indicated that character inquiry should be confined to the particular conduct involved in the charge. Thus, the question of whether defendant was faithful in his duties as a police officer was too narrow an issue. The court noted that defendant was permitted to offer testimony of witnesses as to the reputation of defendant *592 in the community for "honesty," "decency" and "morality," and stated that this was permissible as evidence of qualities which would tend to show the unlikelihood of his having committed the crime charged. 132 N.J.L. Id. at 88.
In State v. Micci, 46 N.J. Super. 454, 462 (App. Div. 1957), the present Chief Justice, then Judge Hughes, noted that there is a certain breadth to the term "honesty." The judge noted that
The epithet "honest" implies a sense of general probity which is the antithesis of criminal tendency or conduct, and which certainly, we think, would imply a "law-abidin" man. In practice, the terms "honesty," "truthfulness" or "veracity," and "being a [lawful man]" are frequently conjoined in the normal foundation question. [at 462-463.]
Character evidence is not intended to give weight to the defendant's personal testimony in the case, but to establish a general character inconsistent with guilt of the crime charged, and the evidence is admissible whether or not the defendant testifies. Edgington v. United States, 164 U.S. 361, 17 S.Ct. 72, 41 L.Ed. 467 (1896).
Even though this case does not involve charges of the species crimen falsi, I find that the defendants may, without offering themselves as witnesses, call witnesses to show that their character was such as to make it unlikely that they would be guilty of the crimes charged, and that such evidence is proper for the consideration of the jury in determining whether there is a reasonable doubt of their guilt.
I find that the characteristics of "honesty" and "truthfulness" are general characteristics which tend to indicate a reputation contrary to the acts charged and which may tend to indicate an unlikelihood of their commission by the defendants. In addition, such traits are indirectly related to the manner in which the defendants carry out their public duties as it goes to whether they would be likely to act in *593 the public interest, as public officers, as opposed to any other interest.
Thus, I will permit the jury to consider such testimony and give it the weight to which they find it is entitled.