STATE OF NEBRASKA, APPELLEE, V.
MICHAEL HORTMAN, APPELLANT.

299 N.W.2d 187

Filed December 1, 1980. No. 43318.

A. James McArthur for appellant.

Paul L. Douglas, Attorney General, and Shanler D. Cronk for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, BRODKEY, WHITE, and HASTINGS, JJ., and BURKHARD, District Judge.

WHITE, J.

The defendant was charged in a two-count complaint filed in the county court of Gage County as the result of incidents which occurred on September 23, 1979, while the defendant was an employee of the Beatrice State Developmental Center. The defendant was charged in count I of the complaint with the crime of assault, Neb. Rev. Stat. § 28-310 (Reissue 1979), a Class I misdemeanor, and in count II, for the violation of Neb. Rev. Stat. § 28-708 (Reissue 1979), causing or allowing an incompetent to be cruelly punished or placed in a situation which endangered his health, also a Class I misdemeanor. A Class I misdemeanor is punishable by a term of up to 1 year in the county jail. The defendant was found guilty after a trial to a jury and sentenced to two concurrent terms of 10 months in the county jail and ordered to pay the costs of the prosecution. The defendant appealed to the District Court for Gage County, Nebraska. He filed a motion for new trial in the county court on the grounds of newly discovered evidence which, under Neb. Rev. Stat. § 29-2101(5) (Reissue 1979), is restricted to "evidence material for the defendant which he could not with reasonable diligence have discovered and produced at the trial . . . ." On appeal to the District Court, the judgment and sentence of the county court were affirmed. Defendant prosecutes an appeal to this court. We affirm.

The defendant assigns four errors in this court: (1) That the District Court failed to order a new trial on the basis of newly discovered evidence; (2) That the county court erred in excluding proffered evidence

of defendant's general reputation for truthfulness; (3) That the verdict is not sustained by sufficient evidence; and (4) That the sentence is excessive. A factual background is necessary.

Both the defendant, Michael Hortman, and the principal witness for the state, Donald Wilson, were employees of the Beatrice State Developmental Center. They were ward attendants in charge of a group of severely mentally retarded patients in one section of the home. Wilson, a recent employee of the home, had gone to work on September 23, 1979, as a ward attendant at 6:30 a.m. and had intended to work until 3 p.m., his normal shift. Because another employee failed to report to work, he was asked and agreed to assist the defendant, Hortman, in the necessary preparation for bathing and feeding the 16 severely retarded persons in their charge. Wilson testified that while he was engaged in giving several patients a whirlpool bath, the defendant, Hortman, was supervising several other residents while they were showering. Wilson first observed the· victim, Conrad Baker, a severely retarded male who had been a resident of the home for 26 years, standing nude in the bathing area. At this time, the defendant, Hortman, asked Wilson to go to the clothing area in a separate part of the facility and get a plastic gallon jug. Wilson did so, gave it to Hortman, and Hortman took Conrad Baker by the arm over to the washbasin, filled the jug with cold water, and poured it over the nude body of Baker. Wilson testified that, immediately thereafter, Hortman took Baker to the northwest corner of the bathroom, "shoved him up into the corner and opened the window up." At that time, according to the witness, "He told [him] to stand there and freeze his fucking ass off." The air from the open window was cold. After approximately 5 or 6 minutes, Wilson left the bathing room area to get his next resident for the whirlpool and, upon returning, he observed the defendant holding "Mr. Conrad's (sic) two arms up into his chest and

hitting him in the stomach while he was still in the same corner." Wilson testified that he remonstrated and asked what Hortman thought he was doing. He stated that Hortman "turned around with somewhat of a grin and stepped back, and then stepped back to Mr. Baker again and hit him again in the stomach, one more time." A short time later, when Wilson had taken a patient out of the whirlpool, the victim had left the bathroom and gone to the bedroom area. The defendant asked Wilson where Baker had gone and was told that he had gone to the bedroom. The witness then observed Hortman holding Baker in a headlock, pulling the victim with him up to the hallway door, and with Baker's head under his arm, Hortman "walks Conrad directly into the left side of the steel door frame. . . . After that happened the blood started spurting out Mr. Baker's eyebrow."

We will discuss the assignments of error in the order presented. During the cross-examination of the witness Wilson, he was asked when he had reported the assault and mistreatment of Conrad Baker to the officials at the home. September 23, 1979, was a Sunday. Wilson stated that his first report had been made to the chaplain at the institution on Tuesday, September 25. When asked why he had not made a report on Monday, September 24, Wilson testified that he was upset about the incident, got drunk, and did not report for work that next day. The truth of Wilson's testimony that he had been drunk the next day is the matter to which the newly discovered evidence relates.

The proffered testimony offered at a hearing in the county court was that of one Martha Mason, an employee of the Nebraska Job Service center. She had interviewed Wilson on the morning of September 24, 1979, and she testified that he did not appear to be intoxicated and that his conduct was in no way unusual. The second witness was one Rolly Salts, the manager of Marshall Produce in Wymore, Nebraska. Salts testified that Wilson appeared at his business

in Wymore between 10 and 11 on the morning of September 24, 1979, and that he did not smell any odor of alcohol on the witness although he "noticed that he [Wilson] had the shakes, like if he had previously been on a drunk." Defendant asserts here that the evidence could not have been ascertained with reasonable diligence before the trial and that the evidence is of such a character that, if believed by the jury, it would be likely to change the result. We disagree.

In *State v. Munson,* 204 Neb. 814, 818-19, 285 N.W. 2d 703, 706-07 (1979), we said: "It must be noted, however, that even if the evidence in this case were considered to have been produced with reasonable diligence, there are additional requirements before a new trial may be granted. The rule is well established that newly discovered evidence must be of such a nature that, if offered and admitted at the former trial, it *probably* would have produced a substantial difference in result. Such evidence must be relevant and credible, and not merely cumulative. It must involve something other than the credibility of witnesses who testified at the former trial. State v. Smith, 202 Neb. 501, 276 N.W.2d 104 (1979); State v. French, 200 Neb. 137, 262 N.W.2d 711 (1978); Finnern v. Bruner, 170 Neb. 170, 101 N.W.2d 905 (1960). We have stated that new evidence tendered in support of a motion for new trial on the ground of newly discovered evidence must be so potent that, by strengthening evidence already offered, a new trial would probably result in a different verdict. State v. Seger, 191 Neb. 760, 217 N.W.2d 828 (1974) . . . ."

As observed in the District Court, the new testimony did not necessarily contradict Wilson's testimony at trial. The newly discovered evidence was collateral to the issue and merely went to the credibility of the witness and would not likely have resulted in a different verdict. The county court and the District Court properly overruled the motion for new trial based on newly discovered evidence.

The second assignment of error arose in testimony of defendant's witness, one James E. Smith, a co-employee of the defendant and the witness Wilson at the Beatrice State Developmental Center. The State, in its case-in-chief, had not introduced any evidence with respect to the defendant's reputation for truth or veracity in the Beatrice community. Defendant's counsel asked the question of Mr. Smith: "I might ask you if you were familiar with Mr. Hortman's reputation in this community for truth and veracity?" The State objected to the question and the objection was sustained. The county court and District Court were correct. Neb. Rev. Stat. § 27-404 (Reissue 1979), Rule 404 of the Nebraska Rules of Evidence, provides, in part: "(1) Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, except: (a) Evidence of a pertinent trait of his character offered by an accused, or by the prosecution to rebut the same . . . ." Under § 27-404(1) (a), defendant can only introduce evidence of a pertinent character trait or traits, not his general character or reputation. In a criminal action, pertinent traits are those involved in the crime on trial, e.g., honesty in theft cases or peacefulness in murder cases. General reputation for truth and veracity in the community is not a pertinent trait in the crime of assault or abuse of an incompetent. Defendant argues that this testimony is admissible under Neb. Rev. Stat. § 27-608 (Reissue 1979), Rule 608. However, § 27-608 excludes the proffered evidence. It provides, in part: "(1) The credibility of a witness may be attacked or supported by evidence in the form of reputation or opinion, but subject to these limitations: (a) The evidence may refer only to character for truthfulness or untruthfulness, and (b) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise." The witness

could not testify to Hortman's good character for truth and veracity because defendant's character had not been attacked in this case. The trial court was correct in excluding the proffered evidence.

The next assignment of error, the allegation by the defendant that the verdict was not sustained by sufficient evidence, will not be further discussed. If the triers of fact believed the witness Wilson, as they did, there was sufficient evidence to sustain the conviction on both counts. The assignment is without merit.

The defendant alleges finally that the sentence was excessive. The penalty for a Class I misdemeanor is a maximum of not more than 1 year imprisonment, or a $1,000 fine, or both. Neb. Rev. Stat. § 28-106 (Reissue 1979). The maximum penalty to which the defendant could have been sentenced was up to 2 years imprisonment. Because the defendant received concurrent sentences, although near the maximum for each charge, he will serve slightly less than half of the maximum to which he could have been sentenced. In view of the obvious vulnerability of the victim, a severely mentally retarded man, and his defenselessness, the crime cannot be characterized as other than a vicious one. We have said that a sentence imposed by the trial court within statutory limits will not be disturbed on appeal unless there has been an abuse of discretion. *State v. Tweedy*, 197 Neb. 851, 251 N.W.2d 380 (1977). No abuse of discretion appears here.

The assignments of error are without merit. The judgment and sentences of the trial court, as affirmed by the District Court, are affirmed.

AFFIRMED.